**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Kevin D. Hall


   v.           Civil No. 07-cv-332-SM


Roger Zerba, Cheshire County
Commissioners, et al.[1]


**O R D E R**


   Before the Court is Kevin Hall's complaint (document no. 1),

filed pursuant to 42 U.S.C. § 1983, alleging that the defendants,

by failing to create policies providing for and ensuring safe and

adequate housing conditions, adequate medical and mental health

care, and privacy in medical records in the Cheshire County House

of Corrections ("CCHC"), were deliberately indifferent to his

health and safety, causing violations of his Eighth Amendment

rights.  Because Hall is a prisoner, this matter is before me for

---

[1]In addition to naming Roger Zerba individually as a
defendant to this action, Hall names the County Commissioners of
Cheshire County, collectively, as defendants to this action.
Hall has sued these defendants in their official capacities as
officials of Cheshire County.  "A suit against a public official
in his official capacity is a suit against the governmental
entity itself."  Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir.
2005).  The claims against Zerba and the County commissioners,
therefore, are claims against Cheshire County.  Id.

preliminary review to determine, among other things, whether or not the complaint states any claim upon which relief might be granted.  <u>See</u> 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded.  <u>See</u> <u>Erickson v. Pardus</u>, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  <u>See</u> <u>Castro v. United States</u>, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997).

2

All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id.  This review ensures that pro se pleadings are given fair and meaningful consideration.

Background

In this action, Hall challenges conditions of his confinement during his incarceration at the CCHC between October 2004 and February 2005.  Hall alleges that when he entered the CCHC, the officials there were aware that he had mental health problems.  Despite this knowledge, Hall claims he was deprived of conditions of confinement that were consistent with his mental health needs.  Specifically, he alleges that he was held in an "isolation chamber" known as "The Closet" during a 43-day suicide watch.  Hall claims that, while in the isolation chamber, he was infrequently checked on, his requests for medical and mental health assistance were ignored or denied, the water and lights were turned off in the isolation chamber, and he was deprived of a mattress and clothing for weeks at a time.  Once, Hall asserts he was left naked and unconscious in a large pool of his own blood from self-inflicted injuries, and then, when he regained consciousness, CCHC personnel gave him a razor and told him to

shave.  Hall states that after 40 days in the isolation chamber, he used a long and heavy piece of metal, that he ripped from the cell's structure, to smash and tunnel through the cinderblock walls of the isolation chamber into cells inhabited by other inmates.  This activity was not noticed for three days due to the lack of adequate supervision in the isolation chamber.  In addition, Hall states that he had very serious medical problems while he was at the CCHC that were not attended to.  Hall claims his condition at that time was so dire that, when he was transferred, after 43 days, to another county jail, he was immediately rushed to the hospital, as the severity of his medical condition was obvious.  At the hospital, he was operated on for life-threatening internal injuries, and spent several weeks in the intensive care unit.  Hall claims that he has suffered serious and permanent damage as a result of the lack of medical care he received at the CCHC.  Finally, Hall also complains that the CCHC systems for managing inmate medical records was inadequate to protect his privacy, as the CCHC had no medical unit and no secure place to store records.

Hall now charges that the defendant, Cheshire County, is responsible for causing the unconstitutional deprivations he

suffered at the CCHC because it failed to create and maintain
policies and practices in the management of the CCHC.  That
failure created the following conditions of confinement which
caused the constitutional violations of Hall's constitutional
rights: (1) failure to maintain a medical unit at the CCHC; (2)
failure to provide video or personal surveillance as necessary to
ensure the safety of suicidal inmates; (3) failure to ensure
adequate staff at the CCHC to protect the health and safety of
the inmates; (4) failure to adequately train staff in medical
response; (5) failure to adequately train staff in suicide
prevention and response; (6) failure to adequately address the
mental health treatment needs of mentally ill inmates; (7)
failure to maintain privacy in inmate medical records; (8)
failure to segregate mentally ill inmates as appropriate; and (9)
failure to prevent harm to Hall by holding him in a cell where he
had access to materials and potential weapons that he was able to
use to injure himself.

<u>Discussion</u>

I.   <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who,
acting under color of state law, violate federal constitutional

or statutory law.  <u>See</u> 42 U.S.C. § 1983[2]; <u>Parratt v. Taylor</u>, 451
U.S. 527, 535 (1981) (<u>overruled on other grounds by</u> <u>Daniels v.</u>
<u>Williams</u>, 474 U.S. 327, 330-331 (1986)); <u>Wilson v. Town of</u>
<u>Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order to be held
liable under § 1983, a defendant's conduct must have caused the
alleged constitutional or statutory deprivation.  <u>See</u> <u>Monell v.</u>
<u>Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>,
103 F.3d 1056, 1061-62 (1st Cir. 1997).  Because Hall has alleged
that Cheshire County, acting pursuant to authority granted by
state law, caused violations of his federal constitutional
rights, this action arises under § 1983.

II.  <u>Eighth Amendment Claims</u>

    A.  <u>Conditions of Confinement</u>

    To state a claim that the conditions of his incarceration
were in violation of the Eighth Amendment's guarantee against

---

[2]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law . . . .

cruel and unusual punishment, Hall must demonstrate that he was subjected to conditions that resulted in a deprivation of his right to humane treatment that was objectively serious, and that the official who caused the deprivation was "deliberately indifferent" to his needs.  See Farmer v. Brennan, 511 U.S. 825, 841 (1994) (citing Canton v. Harris, 489 U.S. 378, 390 (1989)); Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 63-64 (1st Cir. 2002); Giroux v. Somerset County, 178 F.3d 28, 32 (1st Cir. 1999).  A challenged condition of confinement is objectively serious, standing alone or in combination with other conditions, if it deprives the inmate of an identifiable, human need.  See Wilson v. Seiter, 501 U.S. 294, 304 (1991).  A prison official is "deliberately indifferent" if he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and also draws the inference.  Farmer, 511 U.S. at 837 (1994).  Thus, an Eighth Amendment claim arises only if an official inflicts "cruel and unusual punishment" by knowing of and disregarding "an excessive risk to inmate health or safety." Id. at 837, 838; see Giroux, 178 F.3d at 32 (explaining how the official must have "an actual, subjective appreciation of risk").

Hall states that during his time in the isolation chamber, he was often deprived of clothing and bedding for weeks at a time, and was denied access to water and lights.  Further, his cell was often left covered in blood after Hall had injured himself.  Hall states that despite the CCHC personnel's knowledge of his mental health issues and history of self-mutilation and self-injurious behavior, he was held in a cell that was in such poor condition that he was able to rip it apart, not only causing damage to the cell, but giving him access to weapons and materials that he could use to injure himself.  These facts suffice to state a claim for a denial of adequately humane conditions of confinement upon which relief might be granted.

      B.   <u>Medical and Mental Health Care</u>

To assert a viable cause of action for inadequate medical care under the Eighth Amendment, an inmate must first state facts sufficient to allege that the plaintiff had a serious medical need for which adequate care was not provided.  <u>Farmer</u>, 511 U.S. at 832; <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>Estelle</u>, 429 U.S. at 106.  The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide

treatment.  <u>Id.</u>  A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated. <u>Barrett v. Coplan</u>, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); <u>Kosilek v. Maloney</u>, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing <u>Farmer</u>, 511 U.S. at 835–47); <u>see</u> <u>also</u> <u>Gaudreault v. Mun'y of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990) (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").  The Eighth Amendment applies to a prison's administration of medical care, including mental health care. <u>See</u> <u>DesRosiers v. Moran</u>, 949 F.2d 15, 19 (1st Cir. 1991); <u>Torraco v. Maloney</u>, 923 F.2d 231, 234 (1st Cir. 1991) (recognizing deliberate indifference to an inmate's mental health needs violates the Eighth Amendment).

"Adequate medical care" is treatment by qualified medical personnel who provide services that are based on medical considerations and are of a quality acceptable to the prudent professional standards in the community, tailored to an inmate's particular medical needs.  <u>United States v. DeCologero</u>, 821 F.2d 39, 42–43 (1st Cir. 1987).  This does not mean that an inmate is

entitled to the care of his or her choice, simply that care must meet minimal standards of adequacy.  Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco, 923 F.2d at 234.  Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state.  Seiter, 501 U.S. at 302.

Hall asserts that he suffered from a number of serious medical conditions, as a result of mutilating himself externally, and of eating metal and glass objects that severely damaged his internal organs.  Hall advised CCHC personnel of his need for medical care, and CCHC staff were aware of his mental illness and inclination to harm himself, as evidenced by the fact that Hall had been placed on a suicide watch for a period of 43 days.  Even if CCHC personnel were not specifically made aware of his condition, however, Hall claims that his need for medical care was obvious, and that CCHC personnel witnessed him engaging in dangerous behavior and causing significant harm to himself. Additionally, Hall states that when, after 43 days in the

isolation chamber, he was transferred to another county jail, the staff there immediately recognized his need to be hospitalized. I find that these facts suffice to allege a claim that Hall was denied adequate medical and mental health care for a serious medical need, of which CCHC officials were aware.

      C.   Privacy in Medical Records

People have a constitutional right to privacy which protects "the individual interest in avoiding disclosure of personal matters." See Whalen v. Roe, 429 U.S. 589, 599 (1977). Although the right to privacy in one's medical information is well established, see Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001), the precise contours of that right have not been clearly defined in this Circuit. See Borucki v. Ryan, 827 F.2d 836, 848 (1st Cir. 1987) (approving an approach that balances the privacy rights of the individual seeking to protect information against the governmental interest in dissemination). Hall alleges that his medical records were not secured at the CCHC and were stored without regard to his privacy or confidentiality rights as any number of unauthorized people could gain access to them. Accordingly, while the claim, at present, is sparsely alleged,

Hall has stated sufficient facts to allow the claim to proceed at this time.

III. <u>Municipal Liability</u>

Hall has named Roger Zerba, in his official capacity as the Commissioner of Cheshire County, as a defendant to this action, which is another way of naming the County as the defendant to this action. <u>Surprenant v. Rivas</u>, 424 F.3d 5, 19 (1st Cir. 2005). Municipalities and local government entities are "persons" within the meaning of § 1983. <u>See</u> <u>Monell</u>, 436 U.S. at 690. Under New Hampshire law, counties, such as Cheshire, are considered local governmental units. <u>See</u> N.H. Rev. Stat. Ann. ("RSA") 507-B:1 (defining "governmental unit" as "any political subdivision within the state including any county, city, town . . . but [not including] the state or any department or agency thereof."). In New Hampshire, "[t]he county commissioners shall establish polices and procedures for the management of the county department of corrections" and ". . . shall adopt any necessary rules and regulations for the fulfillment of the powers and duties of the superintendent." RSA 30-B:6. Therefore, Cheshire County is the appropriate defendant to a claim challenging

municipal policies or practices creating and causing
unconstitutional conditions of confinement at the CCHC.

In order to maintain an official capacity suit against
Cheshire County, two requirements must be met.  "First, the
custom or practice must be attributable to the municipality,
i.e., it must be 'so well settled and widespread that the
policymaking officials of the municipality can be said to have
either actual or constructive knowledge of it yet did nothing to
end the practice.'"  Miller v. Kennebec County, 219 F.3d 8, 12
(1st Cir. 2000) (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156
(1st Cir. 1989)).  Second, the custom must have been the cause of
and "the moving force" behind the deprivation of constitutional
rights.  See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404
(1997); Wood v. Hancock County Sheriff's Dep't, 354 F.3d 57, 64
(1st Cir. 2003) (citing Miller, 219 F.3d at 12).

Liberally construing Hall's claims, as I must at this stage
of the proceedings, I find that he has alleged that defendant
Cheshire County, as the governmental entity in charge of managing
the CCHC, failed to create policies to adequately manage the
facilities, staffing, and services provided for inmates at the
CCHC.  Hall further alleges specific facts demonstrating that

these failures have created a custom and practice of deprivation and mismanagement which has caused violations of his Eighth Amendment rights to medical and mental health care, humane conditions of confinement, and privacy in his medical records. See Surprenant, 424 F.3d at 20-21.  Accordingly, I find that Hall has stated the minimum facts necessary to sufficiently state a claim for a violation of his Eighth Amendment rights against Cheshire County.

### Conclusion

Without further comment on the merits of the complaint, I order that it be served on defendant Roger Zerba, in his official representative capacity for Cheshire County.  My review of the file indicates that Hall has completed a summons form for Zerba. The Clerk's office is directed to issue the summons against the defendant and forward to the office of the United States Marshal for the District of New Hampshire (the "U.S. Marshal's office"), to the defendants, by delivering to Zerba, as the chief executive officer of Cheshire County, a copy of the summons, complaint (document no. 1), and this Order.  See Fed. R. Civ. P. 4(j)(2). Upon receipt of the necessary documentation, the U.S. Marshal's

office shall effect service upon defendant Cheshire County.  <u>See</u>
Fed. R. Civ. P. 4(c)(2).

Defendant is instructed to answer or otherwise plead within
twenty days of service.  <u>See</u> Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written
motions, notices, or similar papers shall be served directly on
the defendant by delivering or mailing the materials to defendant
or to defendant's attorney(s), pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

James R. Muirhead
_____
James R. Muirhead
United States Magistrate Judge

Date:  May 14, 2008

cc:    Kevin D. Hall, pro se

15